

# NUMBER 13-11-00680-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

LUCAS THOMAS,                                                                              Appellant,

v.

THE STATE OF TEXAS,                                                                      Appellee.

### On appeal from the 148th District Court
### of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Vela
### Memorandum Opinion by Justice Rose Vela

A jury convicted appellant, Lucas Thomas, of aggravated sexual assault of a child, a first-degree felony. S*ee* TEX. PENAL CODE ANN. § 22.021(a), (e) (West Supp. 2011). After a punishment hearing, the jury assessed punishment at life imprisonment and a $10,000 fine. By two issues, appellant asserts: (1) the evidence is legally and factually insufficient to support his conviction, and (2) the punishment was disproportionate to the

seriousness of the offense, in violation of the Eighth and Fourteenth Amendments to the United States Constitution. We affirm.

## I. FACTUAL BACKGROUND

In October 2009, appellant helped his friend, Joann,[1] move from Corpus Christi to Calallen, Texas. She let her two daughters, A.[2] and G.B., ride in appellant's truck while he drove to Calallen. Eleven-year-old G.B. rode in the front-passenger seat, and A. rode in the back seat, where she fell asleep. During the trip to Calallen, appellant started rubbing G.B.'s thighs. She pretended to go to sleep, and he put his hand inside her panties. When the prosecutor asked G.B., "[W]hat do you call the girls' private part?", she said, "Just a private." Next, when the prosecutor asked her, "[W]hen he [appellant] put his hand inside of your panties, were his fingers inside or outside of your private?", she said, "Inside." When the trio arrived at Joann's house in Calallen, G.B. went to bed because she "was scared."

G.B. visited her father, Juan,[3] during the Thanksgiving holidays of 2010. He testified that during this visit, G.B. told him Joann's friend, "Lucas," "touched her" and that this happened when "[t]hey were driving from Corpus to Calallen." When Juan asked her where Lucas touched her, she said, "'[O]n my flower,' in her vaginal area." When he asked her if Lucas touched her over her panties or under her panties, she said, "Under my panties.'" When he asked her, "'Well, did he stick anything in you or just rub or just touch you?'", she said, "'No, he stuck his finger in me.'"

---

[1] Because of privacy reasons, we will not mention Joann's last name.

[2] A.'s last name was not mentioned in the record, and she did not testify.

[3] For privacy reasons, we will not mention Juan's last name.

On November 29, 2010, Carol McLaughlin, a certified pediatric sexual assault nurse examiner, examined G.B. at Driscoll Children's Hospital. When the prosecutor asked her, "Do you recall what [G.B.] told you about why she was . . . [at Driscoll Children's Hospital]?", she testified that "[G.B.] told me: . . . 'A man, Lucas, touched me in the private area, and she indicated her female sexual organ by pointing. He sticked his hand in my pants and touched in my private area.'" She found no abnormalities with any of the parts of G.B.'s genitalia. However, she said that taking into account that the sexual assault occurred about thirteen months prior to this exam, she would not expect to find any kind of trauma to G.B.'s body.

Detective Brandi Moss testified that in November 2010, she scheduled G.B. for an interview at the Children's Advocacy Center (CAC). Ricardo Jimenez, the Program Director and Lead Forensic Interviewer at CAC, testified that on December 1, 2010, he conducted a forensic interview with G.B. The trial court admitted a copy of this interview in evidence as State's exhibit two,[4] and the prosecutor played the interview before the jury.

Dr. Paula Rosenstein, who has a doctorate degree in counselor education, works with child sex abuse victims. She testified that "[t]he far majority [of outcries] are delayed," rather than "immediate" and that sometimes outcries "are delayed for years." When the prosecutor asked her, "[I]s there one explanation for why an outcry is delayed or hundreds?", she said, "[Y]ou can sum them up with the word fear, . . . ."

---

[4] The appellate record does not include State's exhibit 2. This Court requested the Nueces County District Clerk's Office to provide the exhibit; however, that office was unable to locate the exhibit. Nevertheless, appellant does not argue that State's exhibit 2 contains any exculpatory information.

The defense rested and closed its case without calling any witnesses to testify.

## II. DISCUSSION

### A. Sufficiency of the Evidence

In issue one, appellant contends the evidence is legally and factually[5] insufficient to support his conviction.

#### 1. Standard of Review

"The standard for determining whether the evidence is legally sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). In *Malik v. State*, the court of criminal appeals articulated the "standard for ascertaining what the 'essential elements of the crime' are; they are 'the elements of the offense as defined by the hypothetically correct jury charge for the case.'" *Id.* at 294 (quoting *Malik*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The hypothetically correct jury charge is one that at least 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240). The court of criminal appeals has "described the law 'as authorized by the indictment' to be 'the statutory elements of the offense . . . as modified by the charging instrument[.]'" *Id.* (quoting *Curry*

---

[5] The court of criminal appeals has abolished factual-sufficiency review. *See Howard v. State*, 333 S.W.3d 137, 138 n.2 (Tex. Crim. App. 2011). Thus, we will only address appellant's legal-sufficiency challenge.

4

*v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000)).

### 2. Applicable Law

The jury found appellant guilty of aggravated sexual assault of a child under the age of fourteen. *See* TEX. PENAL CODE ANN. § 22.021(a). As applicable here, appellant committed the offense if he intentionally or knowingly caused the penetration of the sexual organ of a child by any means, and the victim was younger than fourteen years of age. *See id.* § 22.021(a)(1)(B)(i), (a)(2)(B). The testimony of G.B., as the child victim, is sufficient alone to support a conviction for aggravated sexual assault. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a), (b)(1) (West 2005); *Lee v. State*, 186 S.W.3d 649, 655 (Tex. App.—Dallas 2006, pet. ref'd).

### 3. Analysis

When the prosecutor asked eleven-year-old G.B., "[W]hen he [appellant] put his hand inside of your panties, were his fingers inside or outside of your private?", she said, "Inside." Her father, Juan, testified that when he asked G.B. where appellant touched her, she said, "'[O]n my flower,' in her vaginal area." When he asked her, "'Well, did he stick anything in you or just rub or just touch you?'", she said, "'No, he stuck his finger in me.'" When the prosecutor asked Carol McLaughlin, the sexual assault nurse examiner, "Do you recall what [G.B.] told you about why she was . . . [at Driscoll Children's Hospital]?", she said, "[G.B.] told me: . . . 'A man, Lucas, touched me in the private area, and she indicated her female sexual organ by pointing. He sticked his hand in my pants and touched in my private area.'" Even though McLaughlin found no abnormalities with G.B.'s genitalia, she stated that taking into account that the reported sexual assault

5

occurred about thirteen months prior to G.B.'s exam, she would not expect to find any kind of trauma.

"Penetration, within the meaning of section 22.021 [aggravated sexual assault] of the penal code, occurs so long as contact with the female sexual organ could reasonably be regarded by ordinary English speakers as more intrusive than contact with outer vaginal lips." *Karnes v. State*, 873 S.W.2d 92, 96 (Tex. App.—Dallas 1994, no pet.) (citing *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992)). "Penetration of the vaginal canal is not required to prove penetration." *Id.* (citing *Vernon*, 841 S.W.3d at 409). Thus, even though Juan testified G.B. told him appellant touched her, "'[O]n my flower,'" G.B.'s testimony is unequivocal that penetration occurred. "The jury determines the credibility of the evidence, not the appellate court." *Id.* G.B.'s testimony is legally sufficient to support the jury's finding.

Viewing the evidence in the light most favorable to the verdict, we hold the jury could have found each element of the charged offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. We conclude the evidence is legally sufficient to support appellant's conviction for aggravated sexual assault of a child under the age of fourteen. Issue one is overruled.

**B.  Disproportionality of Punishment**

In issue two, appellant contends his punishment was disproportionate to the seriousness of the offense, in violation of the Eighth and Fourteenth Amendments to the United States Constitution. The record does not show appellant objected at trial to the sentence of life imprisonment. In addition, he did not raise this argument in a motion for

new trial. Appellant has, therefore, waived this issue on appeal. *See Curry v. State*, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995) (stating that failure to object to cruel and unusual punishment at trial waives federal constitutional challenges to sentence as cruel and unusual punishment). Nevertheless, even absent waiver, we conclude the sentence does not constitute cruel and unusual punishment.

### 1. The Punishment Hearing

During the punishment phase, the State presented several female witnesses, all of whom testified appellant sexually assaulted them when they were under seventeen years of age. J.R. testified appellant "raped me when I was 16 years old." She stated that when appellant was thirty-two years old, he drove her to the beach between North Padre and Port Aransas, Texas so she could watch the sunset over the water. After darkness fell, appellant locked the doors to his vehicle, reclined the front-passenger seat where she was sitting, and positioned himself between her legs. He took off her shorts and "force[d] . . . [her] to have sexual intercourse with him." She testified he put his penis inside of her vagina, and "[w]hen he finally was done, he pulled out and he came on my stomach. . . . [H]e got dressed and he told me that he was going to wait until my 17th birthday and him and his friends were all going to do it. . . ."

A.G. was fourteen years old when she met appellant, who was thirty-one or thirty-two years old. She testified appellant "had me take my pants off, and then he took his shorts off. . . . And then he, basically, put my legs over my head" and "forced his penis inside . . . [my] vagina." Afterwards, appellant gave her $50 and told her "it didn't need to get out."

J.M. met appellant, who was her mother's friend, when she was ten or eleven years old. She testified that at the age of twelve, she was at appellant's house and that he "raped me in his bedroom." She explained that when she was asleep lying sideways she "woke up with him [appellant] inside of [m]e." She jumped off the bed, went to the bathroom, and saw that she was bleeding. Later, while still at his house, she laid down on the couch. Appellant "came out naked with a pillow covering his penis, and he said, "Don't tell anybody. If you do, I know people and I can just make one phone call." When the prosecutor asked her, "How long of a period of time did [appellant] sexually assault you?", she said, "From the time of the rape, from 12 to 16." When the prosecutor asked her, "[H]ow many times did he rape you?", she said, "Seven or eight." She testified that on another occasion, appellant "fondled" her "breast and . . . vaginal region."

When C.M. was in junior high school, she met appellant, who was her mother's friend. She testified appellant "would try to touch [me] in areas that he shouldn't be touching, . . . ." When the prosecutor asked her, "And when you say he would touch you, what areas of your body would he touch you?", she said, "In between my legs and then my boobs." When the prosecutor asked her, "So the kind of things physically that would happen between the two of you would be a lot of . . . touching of your genitalia and touching of your breast?", she said, "Yes."

Six-year-old K.T., who is appellant's niece, testified that when she and appellant were at her grandmother's house, appellant "tried to touch me in my private part, and he did, and he tried to show me his, so I ran away from him. . . ." When the prosecutor asked her, "When he did that stuff to you, did he say anything to you?", she said, "'Don't

8

tell,' and I pinky promised him, but I did tell."

K.T.'s nine-year-old sister, A.T., testified that when she and K.T. were at their grandmother's house, appellant "touched my private part. . . . And he tried to show us his private." When the prosecutor asked A.T., "Did he put his hands on the inside of your pants?", she said, "Outside." When the prosecutor asked her, "And . . . did he take his private out . . . for you to see?", she said, "Yes." When asked, "And did you see it?", she said, "Yes. He tried to get us to touch it, but we didn't. . . ." A.T. testified she "tried to get him to stop messing with me, but he didn't."

The defense did not call any witnesses to testify at the punishment phase.

**2. Applicable Law and Analysis**

The Eighth Amendment to the United States Constitution does not require strict proportionality between the crime and the sentence; rather, it forbids extreme sentences that are "grossly disproportionate" to the crime. *Ewing v. California*, 538 U.S. 11, 23 (2003). The precise contours of the "grossly disproportionate" standard are unclear, but it applies only in "exceedingly rare" and "extreme" cases. *See Lockyer v. Andrade*, 538 U.S. 63, 73 (2003).

The Texas Legislature is vested with the power to define crimes and proscribe penalties for these crimes. *Manuel v. State*, 357 S.W.3d 66, 85 (Tex. App.—Tyler 2011, pet. ref'd); *see Davis v. State*, 905 S.W.2d 655, 664 (Tex. App.—Texarkana 1995, pet. ref'd); *see also Simmons v. State*, 944 S.W.2d 11, 15 (Tex. App.—Tyler 1996, pet. ref'd). Texas courts have repeatedly held that punishment which falls within the limits proscribed by a valid statute is not excessive, cruel, or unusual. *Manuel*, 357 S.W.3d at 85; *see*

9

*Harris v. State*, 656 S.W.2d 481, 486 (Tex. Crim. App. 1983); *Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973); *Davis*, 905 S.W.2d at 654.

In the instant case, appellant was convicted of aggravated sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.021. The crime is a first-degree felony, with a punishment range of imprisonment for life or for any term of not more than ninety-nine years or less than five years, and a possible fine not to exceed $10,000. *See id.* § 12.32(a), (b) (West 2011). The jury assessed punishment at life imprisonment and a $10,000 fine, which fell within the punishment range set forth by the legislature. Therefore, the punishment is not prohibited as cruel, unusual, or excessive per se. *Manuel*, 357 S.W.3d at 85.

However, this does not end the inquiry. Texas courts recognize that a prohibition against a grossly disproportionate sentence survives under the federal constitution apart from any consideration whether the punishment assessed is within the statute's punishment range. *Winchester v. State*, 246 S.W.3d 386, 388 (Tex. App.—Amarillo 2008, pet. ref'd); *Mullins v. State*, 208 S.W.3d 469, 470 (Tex. App.—Texarkana 2006, no pet.). The United States Supreme Court has "recognized that the Eighth Amendment provides a limited proportionality component." *See Harmelin v. Michigan*, 501 U.S. 957, 984-86 (1991). Under the three-part test announced in *Solem v. Helm*, 463 U.S. 277, 292 (1983), the proportionality of a sentence is evaluated by considering (1) the gravity of the offense and the harshness of the penalty, (2) the sentences imposed on other criminals in the same jurisdiction, and (3) the sentences imposed for commission of the same crime in other jurisdictions. The application of the *Solem* test has been modified

10

by Texas courts and the United States Fifth Circuit Court of Appeals in light of the United States Supreme Court's decision in *Harmelin* to require a threshold determination that the sentence is grossly disproportionate to the crime before addressing the remaining elements. *See, e.g.*, *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992); *see also Jackson v. State*, 989 S.W.2d 842, 845-46 (Tex. App.—Texarkana 1999, no pet.).

In determining whether appellant's sentence is grossly disproportionate, we are guided by the holding in *Rummel v. Estelle*, 445 U.S. 263 (1980). In *Rummel*, the Court addressed the proportionality claim of an accused who had received a mandatory life sentence under a prior version of the Texas habitual-offender statute for a conviction of obtaining $120.75 by false pretenses. *Id.* at 266. A life sentence was imposed because the accused had two prior felony convictions—one for fraudulent use of a credit card to obtain $80 worth of goods or services and the other for possessing a forged check in the amount of $28.36. *Id.* After recognizing the legislative prerogative to classify offenses as felonies and, further, considering the purpose of the habitual-offender statute, the Court determined the accused's mandatory life sentence did not constitute cruel and unusual punishment. *Id.* at 285.

In the instant case, the punishment showed appellant had an extensive history of sexually assaulting children. Furthermore, the offense committed by appellant—aggravated sexual assault of a child—was more serious than those committed by the accused in *Rummel*, and appellant's life sentence was the same sentence upheld by the *Rummel* Court. Thus, it follows that if the life sentence in *Rummel* was not unconstitutionally disproportionate, then neither is the sentence

11

assessed against appellant in this case, especially when considering the extensive punishment evidence. Because we do not find the threshold test to be satisfied, we need not apply the remaining elements of the *Solem* test. *See Manuel*, 357 S.W.3d at 86. Issue two is overruled.

### III. CONCLUSION

We affirm the judgment of the trial court.


ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
6th day of December, 2012.